**John E. ARMSTEAD, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 6538.

District of Columbia Court of Appeals.

Argued March 19, 1973.

Decided Sept. 25, 1973.

Robert E. Clem, Washington, D. C., appointed by this court, for appellant.

Julius A. Johnson, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before KELLY and NEBEKER, Associate Judges, and QUINN, Associate Judge, retired.

KELLY, Associate Judge:

In June of 1971 appellant pleaded guilty to three misdemeanors for which he was sentenced to serve concurrent six-month terms of imprisonment "with narcotic treatment and vocational rehabilitation ordered".[1] He was incarcerated at the minimum security facility in Lorton, Virginia, until August 25, when he was transferred by the District of Columbia Department of Corrections to Shaw Residence No. 2, a privately owned halfway house under contract with the Department of Corrections, to participate in a work release program. When appellant failed to obtain employment as required of participants in the program, an administrative decision was made to return him to confinement for the remainder of his sentence.

1. R. at 33.

On September 10, shortly before United States deputy marshals were to take appellant to D.C. Jail, he left the halfway house and failed to return. Three days later he was reported to the Department of Corrections as an escapee and a warrant was issued for his arrest.

Appellant was later apprehended and charged by indictment with prison breach, a violation of D.C.Code 1972 Supp., § 22–2601.[2] A subsequent motion to dismiss the indictment was denied and following a nonjury trial he was found guilty as charged. The trial court's decision was based on findings that appellant had not been placed in a work release program pursuant to court order and therefore the penalty provisions of D.C.Code 1972 Supp., § 24–465(b), containing milder penal sanctions for absconders from work release programs were inapplicable.[3] The court found, alternatively, that even if appellant had been so placed he was subject to prosecution under either D.C.Code 1972 Supp., § 22–2601 or § 24–465(b).

Appellant's arguments on appeal are (1) that the government failed to prove that he had escaped from a "penal institution of the District of Columbia" or "the custody of any official thereof or any other officer or employee of the District of Columbia", essential elements of prison breach under D.C.Code 1972 Supp., § 22–2601; (2) that the trial court erred in finding that he was not placed in a work release program pursuant to court order, and (3) that the court erred in holding that D.C.Code 1972 Supp., § 24–465(b) is not the exclusive sanction for a misdemeanant absconding from a halfway house.[4]

Shaw Residence No. 2, in the District of Columbia, is a so-called halfway house operated under contract with the Department of Corrections. Appellant questions, however, whether it is a penal institution of the District of Columbia within the contemplation of § 22–2601, or that its employees are officers or employees of the District of Columbia. The court found, and we agree, that upon conviction appellant had been committed to the custody of the Attorney General and, through delegation of authority, to a penal institution of the District of Columbia.[5] The Department of Corrections, under whose supervision the Lorton complex falls,[6] placed appellant in a work release program and effected his transfer from the minimum security facility at Lorton to the Shaw halfway house in the District. Appellant remained in the custody of the Department at all times[7] and his place of limited confinement in a halfway house was but a substitute for a more structured environment of the minimum security facility from which he was transferred. He remained in a penal institution of the District of Columbia for purposes of the breach of prison statute and did escape therefrom. Accordingly, the court did not err in finding that the government had

---

2. § 22–2601 reads in pertinent part:

Any person committed to a penal institution of the District of Columbia who escapes or attempts to escape therefrom, or from the custody of any officer thereof or any other officer or employee of the District of Columbia . . . shall be guilty of an offense and upon conviction thereof shall be punished by imprisonment for not more than five years . . . .

3. § 24–465(b) reads:

Any prisoner who willfully fails to return at the time and to the place of confinement designated in his work release plan shall be fined not more than $300 or imprisoned not more than ninety days, or both, such sentence of imprisonment to run consecutively with the remainder of previously imposed sentences. All prosecutions for violation of this subsection shall be in the Superior Court of the District of Columbia upon information filed by the Corporation Counsel of the District of Columbia or any of his assistants.

4. We need not discuss this issue because of the disposition we make of this case.

5. D.C.Code 1967, §§ 24–425, 24–468.

6. D.C.Code 1967, § 24–442.

7. *Cf.* United States v. Perez, 457 F.2d 555 (6th Cir. 1972); United States v. Rudinsky, 439 F.2d 1074 (6th Cir. 1971).

proved beyond a reasonable doubt each element of the offense.

■ The District of Columbia Work Release Act, D.C.Code 1967, § 24–461 et seq., was enacted by Congress in 1966. The Act gave the court authority to grant work release privileges to certain classes of prisoners "when the sentencing judge is satisfied that the ends of justice and best interests of society as well as of the prisoner will be subserved thereby." [8] Placement in a work release program is available only by court order,[9] and those who breach the terms of a work release plan by willfully failing to return at the time and to the place of confinement designated in the plan are subject to prosecution under D.C.Code 1972 Supp., § 24–465(b).

■ It does not appear in the instant case that appellant was placed in a work release program pursuant to court order. A presentence report recommended that appellant be incarcerated, given drug treatment and taught a vocational skill in light of his prior criminal record, his drug problem, and his lack of steady employment. He was sentenced to "6 months with narcotic treatment and vocational rehabilitation". While this ambiguous statement falls short of a court order specifying work release, the Department of Corrections interpreted it as such. When space became available in Shaw Residence No. 2, a facility housing only misdemeanants placed on work release by court order, appellant was transferred there by the Department.

■ The government argues that the absence of a clear court order of work release makes the Work Release Act inapplicable, thus precluding prosecution under D.C.Code 1972 Supp., § 24–465(b) and necessitating the application of the more stringent prison breach statute against him.[10] We agree that when the trial court determines that a defendant convicted of a misdemeanor should participate in a work release program an explicit order to that effect should be entered. The Act provides that in its discretion the sentencing court may grant the privilege of work release. The Department of Corrections is not privileged to interpret an ambiguous order of the trial judge as authorizing work release when the order does not specifically so provide. At the very least, it should seek clarification of such an order to discover the true intent of the sentencing judge. Accordingly, while the administrative error in this case may have led appellant to believe he was sentenced to work release under the Act,[11] it could not limit appellant's prosecution or punishment to the provisions of the Act upon his escape.

Appellant's claim is analogous to that presented in United States v. Vaughn, 144 U.S.App.D.C. 316, 446 F.2d 1317 (1971), where the defendant, on pretrial work release, one day failed to return to the jail. Vaughn, convicted under the federal escape law,[12] argued that since he partici-

8. S.Rep.No.178, 89th Cong., 1st Sess. 2 (1965).

9. D.C.Code 1967, §§ 24–462, 24–463.

10. Appellant's actual sentence for prison breach was from four (4) to twelve (12) months.

11. This belief would have been unrealistic, however, in view of a letter from the trial court of August 9, 1971, which had informed appellant that "The Court, in sentencing you, specified that you were to receive narcotic treatment as necessary, and that you should

be placed in the rehabilitation program provided at the penal institution." United States v. John Elman Armstead, Cr.Div.No. 17959–71.

12. 18 U.S.C. § 751(a) provides:
Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate, or from the custody of an officer or employee

pated in a work release program under authority of the Bail Reform Act, the penal provisions of that act were the exclusive source of sanctions for the violation of his conditional release. The appellate court disagreed, holding that Vaughn's conduct was plainly within the contemplation of the federal escape statute, not the Bail Reform Act. Similarly, under the unusual circumstances of this case, appellant's conduct falls within the contemplation of § 22–2601, not the Work Release Act, and his prosecution for prison breach under § 22–2601 was proper.

Affirmed.

of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both; or if the custody or confinement is for extradition or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined not more than $1,000 or imprisoned not more than one year, or both.