**Carlos J. GONZALEZ, James H. Neal, and William C. Wright, Appellants,**

v.

**UNITED STATES, Appellee.**

**Nos. 84–859, 84–1521 and 84–1809.**

District of Columbia Court of Appeals.
Argued June 26, 1985.
Decided Sept. 30, 1985.

---

Mark Rochon, Public Defender Service, with whom James Klein, Randy Hertz, and Mark Carlin, Public Defender Service, Washington, D.C., were on the briefs, for appellants.

Debra N. Diener, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Robert L. Bredhoff, and Mark H. Dubester, Asst. U.S. Attys., Washington, D.C., were on the briefs, for appellee.

Before PRYOR, Chief Judge, and NEWMAN and ROGERS, Associate Judges.

PRYOR, Chief Judge:

The sole issue presented in these consolidated appeals is whether D.C. Code § 24–465(b) (1981), which sets out a penalty for a work release prisoner's "failure to return" to his designated place of confinement, is the exclusive penalty for such a violation by a misdemeanant sentenced to work release under the District of Columbia Work Release Act, D.C. Code §§ 24–465 *et seq.* (1981) (hereinafter the Work Release Act or Act). We hold that § 24–465(b) does not establish the exclusive penalty for a work

release misdemeanant's failure to return to a correctional facility, and that such a violation is also subject to prosecution under the general prison break statute, D.C. Code § 22–2601 (1981).

## I

The facts underlying each of these appeals are similar. In unrelated cases, Carlos J. Gonzalez, James H. Neal, and William C. Wright were each convicted of one or more misdemeanor offenses. Thereafter, Gonzalez and Neal were each sentenced by the respective trial judges to six months of work release; Wright received a sentence of one year of work release. Pursuant to their work release plans, appellants were each placed in a Community Correctional Center (hereinafter halfway house) and hours were established in which they were permitted to leave the institution in order to work at a place of employment. At some point following commencement of their individual sentences, Gonzalez, Neal, and Wright each failed to return to their designated halfway houses at the stipulated curfew. Each was subsequently arrested and charged with prison break pursuant to § 22–2601. Gonzalez pleaded guilty to the charge and was sentenced to one to three years imprisonment. Neal also pleaded guilty and was placed on probation on the condition that he enroll in the Second Genesis drug rehabilitation program. After Neal absconded from the Second Genesis program, the trial court revoked Neal's probation and imposed a sentence of 17 to 51 months imprisonment. Wright was found guilty of prison break at a stipulated trial and was sentenced to one to three years imprisonment.

Following sentencing, all three appellants filed motions to vacate their respective sentences; Gonzalez and Neal also sought, in the alternative, permission to withdraw their pleas. Each of the three argued that they had been prosecuted under the wrong statute and that, as misdemeanants sentenced to work release, they were subject to punishment solely under the less severe penalties contained in § 24–465(b) of the Work Release Act,[1] which establishes a maximum punishment of ninety days, or a $300 fine, for the offense of failure to return. The motions were all denied, and appellants now appeal the denial of those motions. Because we find that appellants were subject to prosecution under § 22–2601, we affirm their convictions.

## II

### A.

In effect, appellants contend that the penalties set out in § 22–2601 do not apply to their conduct. Therefore, we must determine whether or not a misdemeanant's failure to return to a halfway house is prosecutable under the provisions of § 22–2601.

We begin our analysis with the plain language of § 22–2601. *See Peoples Drug Stores v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (en banc); *Davis v. United States,* 397 A.2d 951, 956 (D.C. 1979). The language of the prison break statute provides as follows:

Any person committed to a penal institution of the District of Columbia who escapes or attempts to escape therefrom, or from the custody of any officer thereof or any other officer or employee of the District of Columbia, or any person who procures, advises, connives at, aids, or assists in such escape, or conceals any such prisoner after such escape, shall be

---

1. Section 24–465(b) provides:

Any prisoner who willfully fails to return at the time and to the place of confinement designated in his work release plan shall be fined not more than $300 or imprisoned not more than 90 days, or both, such sentence of imprisonment to run consecutively with the remainder of previously imposed sentences. All prosecutions for violation of this subsection shall be in the Superior Court of the District of Columbia upon information filed by the Corporation Counsel of the District of Columbia or any of his assistants.

guilty of an offense and upon conviction thereof shall be punished by imprisonment for not more than 5 years, said sentence to begin, if the convicted person be an escaped prisoner, upon the expiration of the original sentence.

D.C. Code § 22–2601 (1981). Previous decisions by this court have interpreted the language contained in § 22–2601, and have determined that, for purposes of this section, the act of failing to return to a halfway house constitutes an "escape," and a halfway house constitutes a "penal institution." *E.g., Mundine v. United States,* 431 A.2d 16, 17 (D.C.1981); *Days v. United States,* 407 A.2d 702, 704 (D.C.1979); *United States v. Venable,* 316 A.2d 857, 858 (D.C.1974) (per curiam); *Armstead v. United States,* 310 A.2d 255, 256 (D.C.1973).

For example, in *Armstead,* the court found that a prisoner, who had been placed in a halfway house on work release through an administrative error, was guilty of escape under § 22–2601, when he left his halfway house and failed to return. Similarly, in *Venable* and in *Days,* the court found that felons who failed to return to their halfway houses after either an authorized or non-authorized departure committed an escape within the meaning of § 22–2601. Thus, our prior decisions support the government's position that § 22–2601 applies to appellants' conduct.

Conceding that the prison break statute if interpreted literally applies to their actions, appellants argue that they were improperly prosecuted because § 24–465(b) is the exclusive penalty provision applicable to *misdemeanants* who "escape" from work release programs.[2] They distinguish our previous decisions on the ground that those decisions involved *felons* placed in work release programs. The Work Release Act, they point out, was only meant to apply to misdemeanants. Appellants contend that the Work Release Act must be

viewed as a "self-contained and complete expression" of the parameters of the work release program, and accordingly, where a misdemeanant is sentenced by the trial court to work release pursuant to the Act, only the Act itself can provide the penalty for a violation. According to appellants, the inclusion of a specific penalty provision in the Act itself evinces congressional intent to make § 24–465(b) the sole penalty for those sentenced under the Act. Disagreeing, the government argues that nothing in either the legislative history or the language of the Act manifests a clear legislative intent to make § 24–465(b) the exclusive penalty for the violations at issue.

We are mindful that when faced with a statutory problem such as this one we have a duty "to make 'every effort' to reconcile allegedly conflicting statutes and to give effect to the language and intent of both." *District of Columbia v. Smith,* 329 A.2d 128, 130 (D.C.1974). Of course, as a first step we must determine whether there exists any actual conflict between the two statutes.

■ Here, there is no conflict on the face of the statutes in question. These statutes, if read literally, merely provide alternative means of prosecuting escape from a penal institution—which includes a halfway house. Section 22–2601 contains no exceptions making its terms inapplicable to escapes by individuals sentenced under the Work Release Act. Significantly, § 22–2601, which was initially enacted in 1932, was amended by Congress twice following the passage of the Work Release Act, and neither amendment changed the language of the statute to reflect an exception for work release participants. *See* ch. 254, § 6(a), 54 Stat. 243 (1970); Pub.L. No. 91–358, § 157(b), 84 Stat. 574 (1973). Similarly, nowhere in § 24–465(b) is there lan-

---

**2.** In a footnote in *Days v. United States, supra,* we rejected this very argument stating that the appellant in that case could have been prosecuted under either the Work Release Act or the prison break statute. 407 A.2d at 703 n. 1. We acknowledge that, in light of the court's holding in *Days,* this language constituted *dicta,* and that the decision of the court today is one of first impression.

guage to the effect that the section's provisions constitute the exclusive penalties for violations committed by misdemeanants sentenced pursuant to the Act, or that the prison break statute does not operate with regard to a failure to return to a halfway house. Nor is there any apparent conflict in the respective procedures set out by the two statutes.[3] In short, having examined the language and provisions of the two statutes, we find nothing which prevents them from coexisting as alternative punishments for escape. Accordingly, we proceed to examine the legislative history of § 24–465(b) to determine whether there is any indication that Congress intended that provision to constitute the exclusive penalty under facts such as these, *i.e.*, whether § 24–465(b), was meant to limit the applicability of § 22–2601.

### B.

■ Congress enacted the District of Columbia Work Release Act in 1966. Pub.L. No. 89–803, 80 Stat. 1519 (1966). The Act authorized the establishment of a work release program under which selected persons convicted of misdemeanors and other minor offenses could, in the discretion of the sentencing judge, be granted work release, "when the sentencing judge is satisfied that the ends of justice and best interests of society as well as the prisoner will be subserved thereby." H.R.REP. No. 2250, 89th Cong., 2d Sess., 3, 7 (1966); *see also Armstead v. United States, supra,* 310 A.2d at 257. The apparent objective of the

legislation was to allow trustworthy prisoners to go into the community each day so that they could work at gainful employment, contribute to the financial support of their families, and maintain their occupational skills. H.R.REP. No. 2250, *supra*, at 2. Notwithstanding emphasis in the Act on rehabilitation, Congress clearly viewed the halfway houses, in which work release prisoners would reside, as places of "incarceration." Such incarceration was deemed important lest the prisoner "go entirely unpunished for his offense against society." *Id.* at 2–3. Under the contemplated scheme, an "inmate" granted a work release program would be "released from actual custody during the time necessary to proceed to his place of employment or other authorized places, perform specified activities and return to a place of confinement...." *Id.* at 3–4.

With the exception of these statements concerning the Act's broad goals and basic content, the legislative history is sparse. Absent from the legislative materials is any express or implied suggestion that the penalty provision set out in the Act was meant to exist as an exclusive, as opposed to an alternative, punishment for an escape from a work release program. It is apparent, however, from the statements quoted above that at all times Congress viewed those misdemeanants sentenced to work release as inmates who are in the actual custody of correctional institutions and who are allowed special privileges because of their putative trustworthiness.[4]

---

**3.** Violations of § 22–2601 are prosecuted by the United States Attorney's office following grand jury indictment, and constitute felonies. Violations of § 24–465(b), on the other hand, are prosecuted by the Corporation Counsel's office, upon information, and constitute misdemeanors.

**4.** Appellants direct the court's attention to what they perceive as a significant relationship between the District's Work Release Act and the Federal Rehabilitation Act, Pub.L. No. 89–176, 79 Stat. 674 (1965) (codified at 18 U.S.C. §§ 4082 *et seq.* (1980)). In particular, appellants note that the federal act, which was passed not long before the District's act, and set out

provisions for work release for federal prisoners, contains a specific provision stating that the willful failure of a prisoner to return to his work release institution would be punishable as an escape under the federal prison break statute, 18 U.S.C. §§ 751–752 (1980). Appellants' reason that had Congress intended the District's prison break statute to apply to failures to return, it would have similarly expressly provided in the local act. We are not persuaded. While the House Report accompanying the District's Work Release Act briefly acknowledges the recently enacted federal act, it makes no comparison between the two acts, except to note that the federal act is "broader in scope" in a variety of ways, than the local act. *See* H.R.REP. No. 2250,

In sum, nothing in the legislative history of § 24–465(b) compels us to conclude that this provision was enacted with the intent to preempt or detract from other preexisting authority to prosecute prison escape cases.

Appellants argue that in the absence of any direct expressions of legislative intent on this issue, this court should rely on certain maxims of statutory construction to discern Congress' intention with respect to the applicable penalty for work release violations. Specifically, appellants rely on the principle of legislative interpretation that, "a specific later statute, rather than an earlier general one, applies to a given transaction described by both acts." *Shelton v. United States*, 83 U.S.App.D.C. 32, 35, 165 F.2d 241, 244 (1947). Absent any evidence whatsoever that Congress intended § 24–465(b) to constitute the sole penalty under these circumstances, we believe that in and of itself "application of the rule that the specific statute prevails over the general [statute] to compel prosecution under [the specific statute] ... is not sufficient to show a legislative preference for prosecution under one applicable statute rather than the other." *People v. Cole*, 84 Ill.App.3d 347, 351, 39 Ill.Dec. 594, 596, 405 N.E.2d 347, 349 (1980) (holding that specific furlough statute with its own escape penalty did not operate to exclusion of general felony escape statute where there was no legislative history indicating government had to proceed under more specific statute); *cf. United States v. Burnett*, 505 F.2d 815, 816 (9th Cir.1974), *cert. denied sub nom. Lyon v. United States*, 420 U.S. 966, 95 S.Ct. 1361, 43 L.Ed.2d 445 (1975).

Moreover, equally instructive, is the well-established rule of statutory construction that where one statute is not irreconcilable with another statute but both statutes can have coincident operation, the court should interpret them so that they are both effec-

tive. In the instant case, we cannot say that § 24–465(b) and § 22–2601 are "irreconcilable" in any meaningful way. *See United States v. Hansen, supra,* at 945. Rather, like many criminal statutes, they merely establish alternative punishments for similar conduct.

Ultimately, it must be remembered that statutory interpretation is an "imperfect science," *Schiaffo v. Helstoski,* 492 F.2d 413, 428 (3d Cir.1974), and "generalities about statutory construction help us little. They are not rules of law but merely axioms of experience." *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952) (citing *Boston Sand & Gravel Co. v. United States,* 278 U.S. 41, 48, 49 S.Ct. 52, 53, 73 L.Ed. 170 (1928)); *see also United States v. Stokes,* 365 A.2d 615, 619 (D.C. 1976).

### C.

Finally, we find nothing in the policies underlying the Work Release Act that militates against our holding that § 22–2601 and § 24–465(b) establish alternative penalties, and that § 22–2601 should be applied according to its terms. To the contrary, there are significant policy reasons that support a conclusion that § 22–2601 should be applied to misdemeanants who escape from work release programs.

It is clear that each of appellants could have been sentenced to regular prison terms in standard correctional institutions. Prisoners incarcerated in regular correctional facilities, including misdemeanants sentenced for the same offenses as those for which appellants were initially convicted, are subject to strict prison security which provides strong disincentives to escape, as well as protection to the community. By contrast, misdemeanants serving sentences in halfway houses lack such

---

*supra,* at 3; 111 CONG.REC. 26652 (1966); *see also United States v. Hansen,* 772 F.2d 940, 946–947 (D.C.Cir. Aug. 30, 1985).

In any event, the promulgation of the federal statute can be viewed as expressing a congres-

sional policy that escape from a halfway house is as serious an offense as escape from any other correctional institution.

physical deterrence, so that the deterrence provided by the increased penalties under the felony prison break statute is particularly important.

Nor do we believe that application of the prison break statute to misdemeanants who violate their work release programs undercuts the rehabilitative goals of the Act. As previously stated, the purpose of work release was to provide special privileges only for those prisoners who appear particularly trustworthy, in order to ease the financial burden on the prisoners' families and the community, and to assist the prisoner in making an adjustment into society. Work release participants are no less guilty of the offenses for which they were convicted than misdemeanants in regular prisons, and when they escape from their work release programs their offense is no less serious than those individuals committed to regular prisons who escape or attempt to escape. As such, they should be subject to the terms of the prison break statute, just as are misdemeanants incarcerated (for the same crimes) in other penal institutions.

Moreover, by enacting both a less punitive misdemeanor penalty and a more severe felony penalty, Congress might well have intended to give the government the flexibility to differentiate in its method of prosecution based on the grievousness of the violation. Thus, the misdemeanor procedure may have been included in the statute in order to afford the government a more streamlined vehicle for prosecuting those individuals who, for example, return to the halfway house a few hours late, as opposed to those individuals who abscond totally from the work release program.[5]

■ Lastly, the availability of two different penalties for escapes from halfway houses in no way violates the notice requirements of the Due Process Clause. While "vague sentencing provisions may pose constitutional questions" where sentencing provisions at issue "unambiguously specify the activity proscribed and the penalties available upon conviction," the fact that particular conduct may violate both statutes "does not detract from the notice afforded by each." *United States v. Batchelder,* 442 U.S. 114, 123, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979). As the Supreme Court has noted, while the availability of more than one statute may "create uncertainty as to which crime may be charged and therefore what penalties may be imposed, they do so to no greater extent than would a single statute authorizing various alternative punishments." *Id.*

In light of our conclusion that the prosecution of misdemeanant work release participants who escape from their halfway houses is proper under both § 22–2601 and § 24–465(b), the prosecution of the appellants under § 22–2601 was a permissible exercise of prosecutorial discretion. *See United States v. Batchelder, supra,* 442 U.S. at 123–24, 99 S.Ct. at 2203–04 (where act violates more than one statute, government may prosecute under either statute so long as it does not discriminate against any class of defendants); *Davis v. United States,* 385 A.2d 757, 760 (1978) (same).

Accordingly, finding no error in the proceedings below, we affirm appellants' convictions.

*Affirmed.*

---

5. We do not mean to imply by our holding that every violation of the terms of a work release plan will necessarily constitute an escape in terms of the prison break statute. Our holding is merely that a misdemeanant in a work release program can be prosecuted under § 22–2601, if the provisions of that section are violated.