[No. 36396. En Banc. November 27, 1963.]

MARTIN G. BOSS, *Respondent*, v. THE CITY OF SPOKANE, *et al., Appellants.*\*

\*Reported in 387 P. (2d) 67.

*John P. Tracy, Jr., Howard A. Anderson, Theodore R. Fournier, Robert F. Ewing,* and *Frank C. Hutchins,* for appellants.

*William P. Fite* and *Gale D. Barbee,* for respondent.

FINLEY, J.—The respondent, Martin G. Boss, instituted this lawsuit on the theory of a tortious conversion of his automobile by the defendants-appellants, City of Spokane, Police Chief Payne, and Police Officer Warrington. This alleged wrongful conversion took place on or about December 15, 1960, when the police department impounded Boss's car because seven previous unpaid parking violations were outstanding against it and/or Mr. Boss, the owner. Mr. Boss did not reclaim his car after paying the tickets, although he was tendered a claim check of the towing company. Instead, he brought the present action for the market value of the car at the time it was impounded.

The 1954 Ford automobile was in the possession of Mr. Boss from the time he purchased it on October 11, 1960, until it was impounded 2 months later. During this interval, the car had been ticketed seven times for overtime parking at 1-hour meter zones in the Spokane down-town area. In each instance the car was unoccupied. On the day in question, defendant Officer Warrington ordered and arranged for the car to be towed away by a private towing company. This was pursuant to order and policy of the Spokane Police Department, enunciated by defendant, Chief

of Police Payne, to the effect that, if a vehicle had five outstanding parking violations against it and was found parked in violation of the city ordinances, it could be impounded. There is a dispute as to whether the driver of the tow truck, after hooking up to the car, waited until the meter showed a violation before he towed the car away.

The first question presented is whether the impounding was unlawful and amounted to a conversion of the car by the defendants. As authority for the policy action by the police department, the appellants rely on Spokane City Ordinance No. C 12833, the pertinent section of which is as follows:

"46.48.300 *Removal of Vehicles by Peace Officer.* Whenever a peace officer finds a vehicle unattended in such a position that it constitutes an *obstruction to traffic,* blocks the use of a fire hydrant, provides a danger to travel, . . . he is hereby authorized to remove and tow away said vehicle. . . ." (Italics ours.)

 The appellants contend that the policy of the police department was a valid interpretation of this ordinance, in that a vehicle parked overtime is an "obstruction to traffic" in the sense that it is a nuisance to the general public, who are entitled to the use of available parking space in the ordinary and customary manner. Such a construction would be a strained and unusual interpretation of the word *obstruction.* It is well established that city ordinances must be interpreted according to the plain and ordinary meaning of the language used. *Sandona v. Cle Elum* (1951), 37 Wn. (2d) 831, 226 P. (2d) 889. Neither the ordinary meaning of the word, nor its use in proximity to the terms "fire hydrants" and "danger to travel," indicates that *obstruction* was intended to include the use of an automobile in such a manner as to inconvenience the public in finding a place to park. We conclude that the impounding of the vehicle was not authorized by this ordinance and, therefore, amounted to a conversion of it by the defendants.

While the plaintiff has established a conversion of his car by the defendants, more was required to support a

right to recover damages from the defendant City of Spokane. As previously pointed out, the plaintiff at no time filed his tort claim with the city, but relied instead on the notice conveyed to the city when he served the summons and complaint in this action on the city on January 3, 1961; (the complaint was filed on April 4, 1961). The pertinent section of Article 12 of the Charter of the city reads as follows:

"Section 115. Claims for Injuries. All persons having claims for damages for personal injuries or for injuries to property sustained by reason of alleged negligence *or any act* of the city, or any officer, agent, servant or employee of the city, must present such claims to the council within 30 days after such injury or damage. They must be in writing and verified, and must state the time when and the place where such injury was received or happened, the cause, nature and extent thereof, the amount of damage sustained, the amount for which the claimant will settle . . ." (Italics ours.)

The respondent contends that this provision should be limited in its application to acts involving negligence, and should not be extended to wilful torts. The basis of this asserted distinction seems to be that the purpose of the nonclaims statute is to provide notice of all claims to the city so that investigation can be made while the facts are still "fresh." The respondent argues that, while the city may be unaware of injuries caused by its negligence, it will always be aware of its wilful torts, and, therefore, the filing statute should not apply. It may be assumed that a particular agent of the city is aware of his act, and "has notice of it," and that the tort of the agent is in legal contemplation that of the city. Nevertheless, the particular officials of the city who are charged with the investigation, settlement and defense of the various tort claims against the city cannot, as a practical matter, be presumed to have actual notice of every fact which each of the city's agents may know. Actual notice is the requirement for effective treatment of tort claims, not theoretical imputed knowledge. To insure that the proper official receives actual knowledge of such claims, the filing provisions have been adopted to

apply to all cases. With this goes a certain procedure and treatment of the notices filed, also necessary to effectuate the purpose of the provisions. Thus, not only must the actual notice be given, but it must be given in a certain way: the procedure set down in the filing provision. Thus, the "actual notice," which the plaintiff claims resulted from the service of process on January 3, 1961, must be considered as insufficient. Whether or not this gave actual notice to the proper officials in this particular instance, it failed to comply with the filing provisions which are designed to insure actual notice in *all cases,* and are accomplished by means of the set procedures necessary to the administration of every large city.

By failing to comply with the *filing of claims provisions,* the plaintiff lost his cause of action against the city.

 Whether the cause of action remains against the two policemen depends upon whether they, as officials of the city, were also protected by the city claim-filing statute. Under the clear words of that provision, the police officers were not protected by the failure to file the claim. The language of the charter that claims must be filed "for injuries to property sustained by . . . any act of the city, or any officer . . . of the city . . ." merely identifies the type of claim to which the section is applicable. The operative language which sets down the consequence of failure to file is found in the fourth paragraph of the section:

"Failure to present such claim in writing, duly verified in form, manner and time aforesaid, shall bar any action *against the city* for such alleged damage or injury." (Italics ours.)

It is clear that the section was not intended to shield the officials in their individual capacities. Had this been the purpose, it would have been a simple matter to add the appropriate language, such as, "or any officer."

The plaintiff's automobile was converted by the appellants; but as against the city, the plaintiff is without remedy because of the failure to file his tort claim in the prescribed manner. For this reason the judgment of the trial court

against the City of Spokane is reversed. The judgment against the individual police officers is affirmed. All parties shall bear their own costs.

ALL CONCUR.