**John J. BREEN, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 13680.**

District of Columbia Court of Appeals.

Argued Jan. 23, 1979.
Decided April 11, 1979.

---

Daniel S. Koch, of the bar of the Commonwealth of Massachusetts, pro hac vice, by special leave of court, for appellant.

Dennis McDaniel, Asst. Corp. Counsel, Washington, D. C., at the time the case was briefed and argued, with whom Louis P. Robbins, Acting Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before KERN, HARRIS and FERREN, Associate Judges.

FERREN, Associate Judge:

The trial court dismissed appellant's complaint for libel with prejudice. The District of Columbia had defended on three grounds: (1) appellant did not comply with the notice requirement of D.C.Code 1973, § 12–309; (2) his pleadings did not satisfy the requirements of Super.Ct.Civ.R. 8(a), 8(e)(1) and 10(b); and (3) the District, in any event, has absolute immunity. Contrary to appellant's contention, we conclude that D.C.Code 1973, § 12–309 applies to intentional torts and that appellant failed to give the required notice. The order accordingly must be affirmed. (We need not reach the pleading and immunity issues.)

## I.

Appellant was formerly employed as a Sanitation Engineer with the District's Department of Environmental Services. On February 18, 1977, he was discharged. The Personnel Action form stated: "This action is taken because of conduct unbecoming a District Government employee when you physically assaulted Ms. Annette L. Mackabee [a co-worker] in the office on October 6, 1976." The full details of the incident were stated in a letter of advance notice to appellant dated October 8, 1976.

Appellant filed a libel complaint in Superior Court on February 4, 1978, alleging defamation of character and seeking compensatory and punitive damages. The District moved to dismiss the complaint or, in the alternative, for summary judgment, alleging the three defenses set forth above. After a hearing on the motion (for which no transcript has been supplied), the trial court dismissed the complaint with prejudice.[1]

## II.

Appellant maintains that D.C.Code 1973, § 12–309 applies only to negligence actions, not to intentional torts. The statute provides:

An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Commissioner of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

The language of the statute is broad, referring to "[a]n action . . . for unliquidated damages to person or property." The required "notice", moreover, is not limited

---

1. Appellee states in its brief that the trial court, alternatively, granted its motion for summary judgment on all three grounds. The record does not reflect this.

to any particular type of action but refers generally to unliquidated claims for "injury or damage." If § 12–309 is inapplicable to certain types of actions, therefore, the limitation must appear clearly enough in the legislative history to overcome the general language of the statute.

Congress enacted the statutory predecessor of § 12–309 in 1933, in response to a report issued by the House Committee on the District of Columbia.[2] H.R.Rep.No. 2010, 72d Cong., 2d Sess. (1933). The House Committee itself had responded to a problem revealed by the United States Court of Appeals for the District of Columbia Circuit in *District of Columbia v. Leys,* 62 U.S.App. D.C. 3, 63 F.2d 646 (1932), *aff'd on rehearing, cert. denied,* 289 U.S. 756, 53 S.Ct. 787, 77 L.Ed. 1500 (1933). The circuit court, on rehearing the case, reaffirmed a judgment in favor of a woman who had obtained a jury verdict for injuries sustained more than three years earlier as a result of a defective sidewalk. The court, however, expressed concern over the fact that the District "was hampered in its defense by the lapse of time between the injury and the suit, during which no claim was made or notice given of the alleged injury." *Leys, supra* at 5, 63 F.2d at 648. The court suggested either a change in the statute of limitations or enactment of a requirement that a person having a claim against the District give notice to the District "within some short but reasonable period"—otherwise legal action would be barred. The court stressed the practical advantages in such a notice requirement; the District could either litigate or settle the claim—promptly.

> Such a requirement would not only enable the District of Columbia to deal with the complaint and prepare its defense while the matter is fresh and evidence available, but also to safeguard other persons from possible injury by remedying the defective conditions, if any were found to exist. [*Id.* at 5, 63 F.2d at 648.]

The court then acknowledged with apparent favor the bill pending in the House which eventually resulted in the statutory predecessor of § 12–309.

The House report is the only pertinent item of legislative history.[3] The Committee expressed its overriding concerns:

> The purpose of the bill is to protect the District of Columbia against unreasonable claims and to assist it in the defense of the public interest where claims are made within the 3-year statute of limitations for so long after the event that it is impossible for the District of Columbia to obtain evidence for use in litigation which may result. H.R.Rep.No.2010, *supra* at 1.

The *Leys* case and other instances of "accidents" causing personal injuries cited to the Committee unquestionably brought about the legislative action. The statute was directed, however, at the broader problems of notice, prompt investigation, and proof, not to the nature of the claims. Thus, even though the House Committee report discussed "accidents," "defective sidewalks," and "remedying defective conditions," the problem addressed was a general one: how to insure that the District had prompt notice of claims for potentially large sums of money, in order that it could quickly investigate matters which otherwise might become so old before the applicable statute of limitations had run that "witnesses . . . had moved" or "the circumstances surrounding the injury had become a matter entirely within the knowledge of the plaintiff." H.R.Rep.No.2010, *supra* at 2.

---

**2.** The statutory predecessor was Pub.L.No.72–385, 47 Stat. 1370 (1933), with language nearly identical to present § 12–309.

**3.** *See* 76 Cong.Rec. 3988 (1933), where a brief House debate on the proposed provision focused exclusively on the notice function. The bill was presented by the Committee Chairman as a general provision "to regulate the bringing of action[s] for damages against the District of Columbia." *Id.* at 3988. One member asked why the time for giving notice was six months instead of the 30 days proposed by the Commissioners. The last sentence authorizing a written police report to serve in lieu of the written notice was also discussed. Finally, a Committee member explained that "this is purely a notice proposition," not a statute of limitations, and added that the Corporation Counsel had prepared the bill.

There is one argument, however, supporting appellant's position: the House Report's reference to a "3-year statute of limitations." At the time Congress adopted the statutory predecessor of § 12–309, the statute of limitations for libel and other specified intentional torts was one year, as it is today. D.C.Code 1973, § 12–301(4). Thus, Congress, as well as the federal circuit court in *Leys, supra,* was reacting primarily to the burden on the city from the three-year statute applicable, for example, to cases involving unlawful detention of personal property, damage to real or personal property, and negligent injury to the person. *See* D.C.Code 1973, § 12–301(2), (3), and (8).

There is no indication, however, that Congress, in focusing on the principal problem (a three-year statute of limitations) intended to preclude the six-month notice provision from protecting the city against a lesser problem. The language of § 12–309 is inclusive. "Most certainly, then, the absence of any legislative history in point should not outweigh the words of the statute." *Souder v. Brennan,* 367 F.Supp. 808, 812–13 (D.D.C.1973). We cannot properly read into § 12–309 a restrictive congressional intention which the statutory language does not reflect and the House report and debate do not directly acknowledge.

In emphasizing the statutory language, rather than the accident cases motivating Congress, we are willing to assume that libel and other intentional torts were "not within the specific contemplation of Congress." *Eastern Airlines, Inc. v. C. A. B.,* 122 U.S.App.D.C. 375, 379, 354 F.2d 507, 511 (1965). Nevertheless, "it is no bar to interpreting a statute as applicable that 'the question which is raised on the statute never occurred to the legislature.'" *Id.* (quoting Cardozo, Nature of the Judicial Process 15 (1921)). We conclude from the broad language used, and from the House Report's emphasis on protecting District revenues,[4] that the congressional concern at the time was a general one: the need for prompt notice of unliquidated damage claims against the District of Columbia. Accordingly, we cannot agree that § 12–309 should be construed to apply only to claims based on "accidents." We hold that D.C. Code 1973, § 12–309 applies as well to actions for injuries arising from intentional torts.[5]

### III.

We turn to appellant's claim that he notified the District in writing of "the approximate time, place, cause, and circumstances of the injury" within six months thereof, as required by § 12–309.

4. The House Report stated, in conclusion, that "this legislation is essential to protect the revenues of the District of Columbia from unreasonable suits" consistent with "adequate protection of the rights of individuals . . . ." H.R.Rep.No. 2010, *supra* at 2.

5. Insofar as we can tell, this is the first case in which the question of the statute's applicability to intentional torts has been expressly raised. While not dispositive, it is interesting to note that both this court and the United States courts in this jurisdiction have consistently construed § 12–309 solely with reference to its notice and investigative functions and accordingly have applied it to intentional tort claims on a number of occasions. *Shehyn v. District of Columbia,* D.C.App., 392 A.2d 1008 (1978) (conversion of property); *Jenkins v. District of Columbia,* D.C.App., 379 A.2d 1177 (1977) (false arrest and malicious prosecution); *Wilson v. District of Columbia,* D.C.App., 338 A.2d 437 (1975) (assault, battery, false arrest, and false imprisonment); *Brown v. District of Co-* lumbia, D.C.App., 304 A.2d 292 (1973) (per curiam) (false arrest, false imprisonment, and assault); *Dellums v. Powell,* 184 U.S.App.D.C. 324, 337–38, 566 F.2d 216, 229–30 (1977) (false imprisonment and malicious prosecution), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978); *Pinkney v. District of Columbia,* 439 F.Supp. 519 (1977) (defamation).

Many other municipal corporations have similar notice provisions. Although the statutory language elsewhere is not identical to § 12–309, several state courts have focused on the notice function and broadly construed the requirement to apply to intentional torts. *See, e. g., Boss v. City of Spokane,* 63 Wash.2d 305, 308–09, 387 P.2d 67, 69 (1963) (en banc) ("negligence or any act" notice provision applies to willful torts); *Brewster v. Baker,* 139 S.W.2d 643, 645 (Tex.Civ.App.1940) (notice requirement for "damages for personal injuries of any kind" applies to libel).

The record establishes that the alleged assault occurred on October 6, 1976. On October 8, 1976, the Acting Director of the Department of Environmental Services of the District of Columbia sent a letter to appellant with the full details upon which the District eventually relied in discharging him from employment. During the period of investigation prior to the discharge, appellant wrote a letter dated January 24, 1977, to the Mayor, stating that the Department Director [Mr. Herbert L. Tucker] had prejudged his case, and asking the Mayor to designate someone else to make the decision in the case, in order to "prevent the likely further damage to my reputation." The Mayor did not honor appellant's request, for on February 18, 1977, the Department Director [Mr. Tucker] completed the D.C. Personnel Action form discharging appellant, effective February 25, 1977.

Within six months after the allegedly libelous statements in the Personnel Action form, appellant wrote another letter to the Mayor, dated June 14, 1977. That letter identified the time and place of the injury but, as to cause and circumstances, referred specifically to "a complaint of racial discrimination." In five other places in the letter, appellant used the words "racial discrimination" (twice), "apparent discrimination," "discrimination," and "racially discriminatory." There was no reference to libel, defamation, or a similar-sounding claim. Finally, on December 13, 1977, more than six months after the alleged libel, appellant wrote a letter to the Mayor, through the Corporation Counsel, attaching a copy of the Personnel Action form and asserting that "the D.C. government has libeled me, stating that I assaulted Annette Mackabee." The letter added: "If you do not make a retraction and prevent further damage, I will seek a remedy in the law."

██ The § 12–309 requirements are mandatory; if there is no timely, written notice, a plaintiff is precluded from litigating his claim. *Pitts v. District of Columbia,* D.C. App., 391 A.2d 803, 807 (1978); *Hill v. District of Columbia,* D.C.App., 345 A.2d 867, 869 (1975); *see District of Columbia v.*

*World Fire & Marine Insurance Co.,* D.C. Mun.App., 68 A.2d 222, 224 (1949). We have held that "precise exactness is not absolutely essential" in meeting the notice requirements, *Hurd v. District of Columbia,* D.C.App., 106 A.2d 702, 705 (1954), and the federal circuit court has indicated that the notice of cause and circumstances need not specifically state an intent to sue, *Rieser v. District of Columbia,* 183 U.S.App.D.C. 375, 390, 563 F.2d 462, 477 (1977) (vacated on other grounds). On the other hand, we have held that a police report, to satisfy § 12–309, must "recite[ ] facts from which it could be reasonably anticipated that a claim against the District might arise," *Pitts, supra* at 809, and that notice of one type of injury in a police report is not notice of another type of injury incurred in the same incident. *Miller v. Spencer,* D.C.App., 330 A.2d 250, 252 (1974) (report of property damage to automobile not sufficient notice of personal injuries).

We have made clear that the required notice to the District is the same, whether in a written notice of injury or in a police report. *See Pitts, supra* at 808; *Jenkins v. District of Columbia,* D.C.App., 379 A.2d 1177, 1178 (1977); *Miller, supra* at 252. Thus, the cases setting forth minimum requirements for police reports to satisfy § 12–309 are equally applicable in written-notice cases, such as the present one.

██ Although appellant's letter of January 24, 1977, prior to his discharge, expressed concern about "the likely further damage to my reputation," his letter of June 14, 1977, after the discharge, was solely and emphatically directed to a concern about injury from racial discrimination. He did not give written notice to the Mayor of a libel claim for damages until the letter of December 13, 1977, more than six months after the alleged injury. *See Miller, supra.* Given the specificity of appellant's post-discharge concern about racial discrimination, the District could not reasonably have been expected to anticipate the possibility of a libel action. To hold that notice was proper here would be to frustrate the purposes of § 12–309, namely, to give the District an

opportunity to investigate and make timely adjustment of the claim (here, libel). *See Pitts, supra* at 809–10; *Jenkins, supra* at 1178.[6]

### IV.

Accordingly, we affirm the trial court's dismissal of appellant's complaint.

*So ordered.*

---

**6.** The pre-discharge letter of January 24, 1977 referring to "reputation" does not literally satisfy the § 12–309 requirement of notice "within six months *after* the injury or damage was sustained" (emphasis added). *See Shehyn, supra* at 1015 n.7. Although we forbear from holding that notice of inevitable future injury will never satisfy § 12–309, this case shows why the statute speaks only of notice after the injury—and should bar assertion of appellant's claim here. If appellant, after the six months had run, were permitted to relate his notice of a libel claim back to his predischarge letter expressing concern about a "likely" damage to reputation, the purposes of the statute would be frustrated by appellant's own action indicating that his only remaining concern, after discharge, was injury from racial discrimination.