**Charles R. HARMAN, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 95–C0–1589.**

District of Columbia Court of Appeals.

Argued May 26, 1998.

Decided Sept. 3, 1998.

Douglas Wham, appointed by the court, for appellant.

Helen M. Bollwerk, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher and Colleen M. Kennedy, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN and REID, Associate Judges, and BELSON, Senior Judge.

REID, Associate Judge.

This case presents the issue as to whether a person who is acquitted of a crime by reason of insanity may be conditionally released from St. Elizabeths Hospital before he is paroled on a concurrent criminal sentence. The trial court granted appellant's motion for a conditional release but required, *inter alia*, that the Parole Board grant him parole from his criminal sentence prior to his actual release. We affirm.

## FACTUAL SUMMARY

In 1974, appellant Charles R. Harman was convicted of the July 30, 1973 murder of Diane J. Zilenski. After a bifurcated jury trial, he was found not guilty by reason of insanity of second degree murder while armed and assault with intent to commit rape while armed. However, he was convicted of first degree burglary while armed. Harman was committed to St. Elizabeths Hospital under D.C.Code § 24–301(d)(1) (1996) on the murder and attempted rape charges, and sentenced concurrently to incarceration for a period of fifteen years to life on the burglary charge. After Harman's direct appeal, this court affirmed the trial court's judgment as to the murder, assault and burglary charges. *Harman v. United States,* 351 A.2d 504 (D.C. 1976), *cert. denied,* 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1976).

Since his 1974 trial, Harman has been a resident of St. Elizabeths Hospital. Although the Hospital certified in 1980 and 1982 that, under § 24–301(e), he was no longer in need of hospitalization, the trial court denied his petition for release. His subsequent efforts between 1982 and 1992 to gain unconditional or conditional release failed. In addition, he was denied parole in 1988, 1991 and 1995, and is not eligible for consideration again until January 2000.

On January 25, 1993, Harman filed a motion for conditional release pursuant to § 24–301(k). In an extensive November 14, 1994 memorandum decision, containing findings of fact and conclusions of law, the trial court determined that Harman proved by a preponderance of the evidence that he was medically eligible for conditional release,[1] provided he met certain conditions prior to his release, including the grant of parole from his first degree burglary while armed conviction. After the Parole Board denied his request for parole in January 1995, Harman filed a motion for reconsideration on June 30, 1995, challenging the parole condition. The trial court denied the motion and Harman filed a timely appeal.

## ANALYSIS

■ Harman argues that he is legally entitled to exercise his statutory conditional release privilege[2] even though he has not been

---

1. The issue of Harman's medical eligibility for conditional release is not before us.

2. Section 24–301(d)(1) provides:

granted parole from his criminal conviction. He maintains that because St. Elizabeths Hospital has had actual custody over him for twenty years, and he has never been incarcerated in a penal institution, the Hospital has the authority, without usurping the Parole Board's power, to grant him limited access to the community for the purpose of seeking work and spending time with his wife at their residence. The government contends that Harman's appeal should be barred because he initially agreed that his release should be conditioned on a grant of parole. In the alternative, the government asserts that unless Harman is granted parole, he may not be released conditionally from St. Elizabeths Hospital under the District's work release and furlough statutes; and further, that the trial court did not commit plain error in conditioning Harman's release on a grant of parole from his criminal conviction. In his reply brief, Harman claims that his appeal is not barred because it is taken from a second motion, his motion for reconsideration, and not from his original motion for conditional release from custody. He also asserts that the government has waived its claim that the work release and furlough provisions are applicable to him because this claim was not raised in the trial court; and further, that the work release statutes do not apply to him since he is not in the actual custody of the Department of Corrections. "We review the trial court's legal conclusions de novo." *Budoo v. United States,* 677 A.2d 51, 54 (D.C.1996).

We turn first to the procedural claims raised by the government and Harman. Citing *Brown v. United States,* 627 A.2d 499, 508 (D.C.1993), the government contends that Harman's appeal should be barred because the position he has taken on appeal regarding parole as a condition for his release differs from that which he took in the trial court. Although Harman agreed to the parole condition in his original motion for release, in his motion for reconsideration, filed after he was denied parole, he asserted the invalidity of the parole condition. However, this issue need not detain us because, even assuming Harman's argument has merit, he is not entitled to a conditional release from St. Elizabeths until he has been granted parole on his criminal conviction. We reject Harman's contention that the government's work release and furlough arguments may not be heard on appeal because they were not raised in the trial court. Generally, it is true that issues not raised in the trial court will not be heard on appeal. *Hall v. United States,* 343 A.2d 35, 37 (D.C.1975). However, the government did raise the work release statute in its opposition to Harman's motion for reconsideration; and the issue raised by Harman requires an interpretation of several statutory provisions, including the work release and furlough statutes. Furthermore, "[t]his court may affirm a decision for reasons other than those given by the trial court." *Adams v. United States,* 502 A.2d 1011, 1015 n. 2 (D.C.1986) (citations omitted).

We turn next to the principal issue as to whether an insanity acquittee may be given a

If any person tried upon an indictment or information for an offense raises the defense of insanity and is acquitted solely on the ground that he was insane at the time of its commission, he shall be committed to a hospital for the mentally ill until such time as he is eligible for release pursuant to this subsection or subsection (e) of this section.

Section 24–301(e) provides in pertinent part:

Where, in the judgment of the superintendent of [St. Elizabeths Hospital], a person confined under subsection (d) of this section is not in such condition as to warrant his unconditional release, but is in a condition to be conditionally released under supervision, and such certificate is filed and served ..., such certificate shall be sufficient to authorize the court to order the release of such person under such conditions as the court shall see fit at the expiration of 15 days from the time such certificate is filed and served pursuant to this section; provided that the provisions as to 'hearing prior to unconditional release shall also apply to conditional releases, and if, after a hearing and weighing the evidence, the court shall find that the condition of such person warrants ·his conditional release, the court shall order his release under such conditions as the court shall see fit, or, if the court does not so find, the court shall order such person returned to such hospital.

Section 24–301(k)(1) provides in relevant part:

A person in custody ..., claiming the right to be released from custody, ... or other relief concerning his custody, may move the court having jurisdiction to order his release, to release him from custody, ... or to grant other relief.

conditional release from St. Elizabeths Hospital before being granted parole from his criminal conviction. Because Harman is both an insanity acquittee committed to the legal and actual custody of St. Elizabeths Hospital, and a convicted prisoner committed to the legal custody of the Department of Corrections, we are faced with an interpretation of provisions set forth in three separate chapters of Title 24 of the D.C.Code. Chapter two relates to the Parole Board's authority. Chapter three concerns persons acquitted of criminal charges by reason of insanity; and chapter four pertains to persons sentenced for criminal convictions. Chapters two and four reflect public safety factors, and chapter three manifests treatment factors as they relate to a St. Elizabeths Hospital patient. Harman claims entitlement to conditional release under chapter three so that he may be ensured adequate treatment in the least restrictive environment; and the government insists that he may not be released conditionally from St. Elizabeths Hospital under chapters two and four without parole.

■ This court adheres to the proposition " 'that if divers statutes relate to the same thing, they ought all to be taken into consideration in construing any one of them....' " *Luck v. District of Columbia,* 617 A.2d 509, 514 (D.C.1992) (quoting *United States v. Freeman,* 44 U.S. (3 How.) 556, 564–65, 11 L.Ed. 724 (1845) (other citations omitted)). *See also* 2B Norman J. Singer, Sutherland Statutory Construction § 51.03, at 138 (5th ed. 1991) ("Statutes are considered to be in pari materia when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object."). If statutes conflict, our task is to reconcile them if possible. As we said in *Gonzalez v. United States,* 498 A.2d 1172 (D.C.1985): "[W]e have a duty to make every effort to reconcile allegedly conflicting statutes and to give effect to the language and intent of both." *Id.* at 1174 (quoting *District of Columbia v. Smith,* 329 A.2d 128, 130 (D.C.1974) (internal quotations omitted)). Moreover, "where one statute is not irreconcilable with another statute but both statutes can have coincident operation, the court should interpret them so that they are both effective." *Id.* at 1176.

■ Our task is to determine whether, if the statutes conflict, they can be reconciled; or whether the statutes can have coincident operation if they are not irreconcilable. Harman recognizes, as he must, that St. Elizabeths Hospital does not have legal control over him with respect to his criminal conviction. D.C.Code § 24–425 specifies in pertinent part that:

All prisoners convicted in the District of Columbia for any offense ... shall be committed, for their terms of imprisonment, and to such types of institutions as the court may direct, to the custody of the Attorney General of the United States or his authorized representative ....

The District of Columbia Department of Corrections is the authorized representative of the Attorney General. Nonetheless, Harman insists that St. Elizabeths Hospital's actual and sole custody over his person trumps the legal authority given to the Department of Corrections. In support of this argument, he cites *Cannon v. United States,* 207 U.S.App. D.C. 203, 645 F.2d 1128 (1981). His reliance on *Cannon* is misplaced. That case involved an issue as to the civil liability of the federal government under the Federal Tort Claims Act to a District prisoner housed in the Lorton Reformatory. It did not address the scope and extent of the Department of Corrections or the Parole Board's administrative authority over District prisoners relating to public safety factors.

■ With regard to public safety factors, the authority of St. Elizabeths Hospital is limited, particularly when a resident seeks to leave the hospital campus pursuant to D.C.Code § 24–301(e). *See United States v. Ecker,* 177 U.S.App. D.C. 31, 35–36, 543 F.2d 178, 182–83 (1976), *cert. denied,* 429 U.S. 1063, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977) ("[W]hen, and if, the patient is to cross the hospital boundary, then other factors affecting the public come into play, and both the statute and our decisions impose a different role and far heavier responsibilities on the courts."). As we said in *DeVeau v. United States,* 483 A.2d 307, 312 (D.C.1984):

It has been observed that the primary concern of hospitals and psychiatrists is

whether release constitutes sound therapeutic treatment for the patient.... Courts, however, are charged with the broader task of assuring the best treatment for the acquittee *in a manner that protects the public safety.*

*Id.* at 312 (emphasis in original) (citations and footnote omitted). Thus, "[t]he public safety ... places a practical restriction upon the types of treatment (*e.g.,* conditional release) available to the acquittee." *Id.* at 312 n. 10 (referencing *Ecker, supra,* 177 U.S.App. D.C. at 53, 543 F.2d at 200). This is particularly true where, as here, appellant is both an insanity acquittee and a convicted felon.

Under the statutes and regulations governing convicted felons, Harman may not be released to the community without the approval of the Parole Board. *See* D.C.Code §§ 24–201.2, –204(a). The Parole Board may give its approval only after determining, *inter alia,* that the convicted felon "will live and remain at liberty without violating the law, [and] that his release is not incompatible with the welfare of society...." D.C.Code § 24–204(a). The Parole Board has not granted parole to Harman from his criminal conviction, and he may not receive the equivalent of parole through a conditional release from St. Elizabeths Hospital.

■ To the extent that his conditional release may be deemed the functional equivalent of work release or a furlough, Harman is ineligible because he has not satisfied the statutory requirements for participation in those programs. D.C.Code § 24–461 applies only to those found guilty of misdemeanors or other minor offenses.[3] Moreover, D.C.Code § 24–462 provides in part that: "No person shall be given work release privileges except by order of the sentencing court or the Director of the Department of Corrections, or by order of the Board of Parole...." Harman has satisfied neither of these requirements, and thus, is ineligible for work release. Nor has he demonstrated eligibility for the furlough program under §§ 24–482 and –483.[4]

The statutory provisions governing an insanity acquittee and those relating to a convicted felon are not irreconcilable. They have "coincident operation," *Gonzalez, supra,* 498 A.2d at 1176, and they may be interpreted to give them all effect. While § 24–301 gives Harman the right to a conditional release for treatment purposes, that right is not without limitation because, under that statute, the court is charged with the responsibility of ruling in a manner "as may appear appropriate." This includes the importation of other statutory requirements which oper-

---

**3.** The work release program is available to,

> any person who is: (1) convicted of a misdemeanor or of violating a municipal regulation or an act of Congress in the nature of a municipal regulation, and is sentenced to serve in a penal institution a term of 1 year or less; (2) imprisoned for nonpayment of a fine, or for contempt of court; or (3) committed to jail after revocation of probation ....

D.C.Code § 24–461 (1998 Supp.).

**4.** D.C.Code § 24–482 authorizes the Mayor or his designee to grant a resocialization furlough to an eligible inmate. D.C.Code § 24–483 (1998 Supp.) sets forth the reasons for which a furlough may be granted. It provides in pertinent part:

> (a) The Mayor, or his designated agent, may grant a furlough, except as provided in subsection (c) of this section, to any eligible resident:
> (1) In order to visit the bedside of a dying relative, or to attend the funeral of a relative, in the Washington metropolitan area;
> (2) Upon the recommendation of the institutional review committee, in order to call upon prospective employers in the Washington metropolitan area, enroll in an educational institu-

tion or program, obtain suitable housing prior to release, or to finalize parole supervision plans with an officer or employee of the Department [of Corrections]; or
> (3) Upon the recommendation of the institutional review committee, to participate in family and approved community, religious, or educational, social, civic, and recreational activities, when it is determined that such participation will directly facilitate the transition from life in the facility or institution to life in the community.
> ....
> (c) The Mayor, or his designated agent, may grant a furlough to an eligible resident for longer than 12 hours, but for no longer than 72 hours, where he finds that, based on a report from the institutional review committee, such eligible resident:
> (1) has demonstrated complete institutional adjustment;
> (2) Is strongly motivated to benefit from the program;
> (3) Is considered to have exceptional potential for rehabilitation; and
> (4) Will not, while on furlough, constitute a threat or danger to the community.

ate in the context of a patient who has the dual status of prisoner within the legal custody of the Attorney General. Harman, both a patient and a prisoner, is subject to the provisions of both § 24–301 and the statutes governing the release of prisoners. He may not be released unless he satisfies the requirements of all these provisions. The precondition of parole imposed by the trial court is consistent with the statutory provisions governing the authority of the Parole Board over convicted felons, and the power of the Department of Corrections to grant a work release and a furlough. Moreover, should Harman be released unconditionally from St. Elizabeths Hospital prior to parole from his criminal conviction, under D.C.Code § 24–303(b) he would be placed in the actual custody of the Department of Corrections to continue serving his criminal sentence.[5] In short, the trial court did not err in denying Harman's motion for reconsideration.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*

---

**5.** Section 24–303(b) specifies:
 When any person confined in a hospital for the mentally ill while serving sentence shall be restored to mental health within the opinion of the superintendent of the hospital, the superintendent shall certify such fact to the Director of the Department of Corrections of the District of Columbia and such certification shall be sufficient to deliver such person to such Director according to his request.