**Theodore R. GEORGE,
M.D., Appellant,**

v.

**Lyannette DADE, Appellee.**

No. 97–CV–1127.

District of Columbia Court of Appeals.

Argued Dec. 3, 1999.
Decided March 22, 2001.

---

Donna M. Murasky, Assistant Corporation Counsel, with whom Jo Anne Robinson, Interim Corporation Counsel at the time the brief was filed, and Charles L. Reischel, were on the brief, for appellant.

Wayne M. Willoughby, with whom Zev T. Gershon and Robin R. Smith, Baltimore, MD, were on the brief, for appellee.

Before WAGNER, Chief Judge, and REID and GLICKMAN, Associate Judges.

REID, Associate Judge:

In this case, appellant Theodore R. George, M.D., an employee of the District of Columbia General Hospital, challenges the trial court's decision not to grant him judgment as a matter of law in a medical malpractice matter where the jury returned judgment in excess of $1.2 million in favor of appellee Lyannette Dade. He contends that the trial court erred in failing to dismiss the action against him, since Ms. Dade did not provide requisite notice of her claim to the District of Columbia under D.C.Code § 12–309 (1995). We affirm the judgment of the trial court, concluding that Ms. Dade was not required to give notice to the District under § 12–309, with respect to her claim against Dr. George in his individual capacity, even though the District must indemnify him, as a medical employee under D.C.Code § 1–1215(b) (1999), if he is "not covered by appropriate insurance purchased by the District."

## FACTUAL SUMMARY

The record before us shows that on November 23, 1993, one week after giving birth at the D.C. General Hospital, Ms. Dade returned there, complaining of a headache. Her pressure was elevated. Dr. George, the attending physician, prescribed two anti-hypertensive medications, and instructed Ms. Dade to report to the Georgetown Medical Clinic two weeks later for a follow-up visit. On November 24, 1993, Ms. Dade suffered a massive stroke and related complications, including a coma. After care and rehabilitation at the

Greater Southeast Community Hospital, Ms. Dade was discharged on February 24, 1994.

On May 23, 1995, Ms. Dade filed suit against Dr. George, alleging medical negligence; but she did not notify the District of her claim within the six month statutory period set forth in § 12–309 which provides:

An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

On August 3, 1995, Dr. George, through his attorney, an Assistant Corporation Counsel, filed a motion to dismiss the complaint or for summary judgment, on the ground of Ms. Dade's alleged failure to comply with the requirements of § 12–309.[1] In his memorandum of points and authorities in support of his motion, Dr. George stated, in part: "Because Dr. George has a statutory right to indemnification for damages resulting from personal injury caused by his negligence, see D.C.Code § 1–1215(b), the District of Columbia is the real party in interest in this case." Section 1–1215(b) provides:

Whenever in a case in which the District of Columbia is not a party, a final judgment and order to pay money damages is entered against a medical employee of the District of Columbia on account of personal injury or death caused by the negligent act or omission of the medical employee within the scope of his employment and performance of professional responsibilities, the District of Columbia shall, to the extent the medical employee is not covered by appropriate insurance purchased by the District of Columbia, indemnify the employee in the amount of said money damages.

On February 23, 1996, the Honorable Judith E. Retchin filed a pre-trial order denying Dr. George's motion to dismiss. The order stated: "Plaintiff is not required to sue the District of Columbia to maintain her action against defendant." After trial, in considering Dr. George's motion for judgment as a matter of law, Judge Retchin again concluded that Ms. Dade did not violate § 12–309. She stated, in part:

[I]f the legislature intended that notice be served on the District when indemnification is required, it could have included such a requirement in either section 12–309 or section 1–1215(b). In the meantime, this Court is obliged to interpret section 12–309 as it is written, and it does not require that notice be given to the District when an individual employee is sued.

As support for her conclusion, Judge Retchin referenced a memorandum opinion issued by the Honorable A. Franklin Burgess, Jr. of the Superior Court of the District of Columbia in *Peters v. Reid,* Civ. No. 92–8309 (Super.Ct.D.C. Aug. 10, 1993). Judge Burgess declared:

The Court sees the policy arguments advanced by the District but believes that it is constrained by the plain words of the statute to rule against the District's position. It is basic that the plain words of a statute must be followed unless the clearly expressed intent of the legislature reveals ambiguities or the plain language leads to absurd or plainly

1. Since Dr. George was a medical employee of the D.C. General Hospital, he was represented by the Office of the Corporation Counsel.

unjust results. Further, a court may depart from the plain meaning if examination of the legislative history or the statute shows a truly discernible purpose which departure from the plain meaning will serve. *Peoples Drug Stores v. District of Columbia,* 470 A.2d 751, 754–55 (D.C.1983) (en banc). The District has not pointed to any legislative history of either statute under consideration indicating an ambiguity in the language or showing that the legislature intended that "maintained against the District" be construed to include actions not maintained against the District but having the effect, if maintained successfully, of requiring the District to indemnify the person against whom judgment is entered. The plaintiff appropriately points to § 1–1215(a) as suggesting that the intent was actually as expressed in the plain wording of the statute. In § 1–1215(a) the legislature chose to allow a plaintiff, suing for damages for a tort arising out of use of a vehicle, to sue only the District, thereby requiring the notice under § [12–]309. In the section under consideration, by contrast, the legislature recognized that an action could be brought against the individual only.

*Id.* at 3–4.

Dr. George filed a timely appeal from the trial court's judgment.

## ANALYSIS

Relying primarily on *Doe by Fein v. District of Columbia,* 697 A.2d 23 (D.C. 1997), and two cases from New York courts, Dr. George contends that: "An action for damages against District of Columbia employees for conduct within the scope of their employment is barred if the complainant fails to give notice of his claim pursuant to D.C.Code § 12–309." Ms. Dade argues that, based upon the "express language" of § 12–309, cases from other jurisdictions, and the provisions of § 1–1215(a),[2] in contrast to those of § 1–1215(b), she was not required to notify the District of her claim against Dr. George.

We review this matter *de novo. See District of Columbia v. Arnold & Porter,* 756 A.2d 427, 436 (D.C.2000) (" 'Compliance with § 12–309 is a question of law that we review *de novo.* ' ") (quoting *District of Columbia v. Ross,* 697 A.2d 14, 17 (D.C.1997) (other citation omitted)). "[C]ompliance with [the] terms [of § 12–309] is 'mandatory as a prerequisite to filing suit against the District.' " *Id.* (quoting *District of Columbia v. Dunmore,* 662 A.2d 1356, 1359 (D.C.1995) (quoting *Hardy v. District of Columbia,* 616 A.2d 338, 340 (D.C.1992))). "Moreover, [b]ecause it is in derogation of the common law

2. Section 1–1215(a) provides that:

After the effective date of §§ 1–1211 to 1–1216 [regarding the liability or non-liability of District government employees, and the indemnification of medical employees of the District], no civil action or proceeding shall be brought or maintained against an employee of the District for loss of or damage to property or for personal injury, including death, resulting from the operation by such employee of any vehicle if it be alleged in the complaint or developed in a later stage of the proceeding that the employee was acting within the scope of his office or employment, unless the District shall, in an action brought against it for such damage or injury, including death, specifically deny liability on the ground that the employee was not at the time and place alleged, acting within the scope of his office or employment. If in any such civil action or proceeding pending in a court for the District of Columbia as of the effective date of §§ 1–1211 to 1–1216 the District has not been named as a defendant and after its answer has been filed and subject to the provisions of the preceding sentence, the action shall be dismissed as to the employee and the case shall proceed as if the District had been a party defendant from the inception thereof.

principle of sovereign immunity, section 12–309 is to be construed narrowly against claimants." *Id.* (quoting *Gross v. District of Columbia,* 734 A.2d 1077, 1081 (D.C. 1999) (quoting *Doe by Fein, supra,* 697 A.2d at 29) (quoting *Dunmore, supra,* 662 A.2d at 1359)) (internal quotations omitted).

Before examining §§ 12–309 and 1–1215, we set forth pertinent principles of statutory construction. Long ago, the Supreme Court of the United States said in *Caminetti v. United States,* 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917): "Where the language [of a statute] is plain and admits of no more than one meaning the duty of interpretation does not arise and the rules which are to aid doubtful meanings need no discussion." *Id.* at 485, 37 S.Ct. 192 (citation omitted); *see also Luck v. District of Columbia,* 617 A.2d 509, 512 (D.C. 1992). *However, in Peoples Drug Stores, Inc., supra,* 470 A.2d at 754, we said that: "[E]ven where the words of a statute have a 'superficial clarity,' a review of the legislative history or an in-depth consideration of alternative constructions that could be ascribed to statutory language may reveal ambiguities that the court must resolve." (citations omitted).

 Where two or more statutes relate to the same subject area, we construe them together. *See Harman v. United States,* 718 A.2d 114, 117 (D.C.1998). "If statutes conflict, our task is to reconcile them if possible." *Id.* (referencing *Gonzalez v. United States,* 498 A.2d 1172, 1174 (D.C.1985)) ("[W]e have a duty to make every effort to reconcile allegedly conflicting statutes and to give effect to the language and intent of both.") (citation and internal quotation omitted). " '[W]here one statute is not irreconcilable with another statute but both statutes can have coincident operation, the court should in-

terpret them so that they are both effective.' " *Id.* (citation omitted).

The plain language of neither § 12–309, nor § 1–1215, states that a claimant must give notice of the claim to the District within six months after an injury or damage was sustained where, as here, suit is brought against a medical employee of the District in his individual capacity. The words of § 12–309 concern "[a]n action ... maintained against the District ... for unliquidated damages to person or property...." Moreover, § 1–1215 addresses an action relating to negligent operation of a vehicle by a District employee: "[a] civil action or proceeding ... brought or maintained against an employee of the District for loss of or damage to property or for personal injury, including death, resulting from the operation by such employee of any vehicle ... [while] acting within the scope of his office or employment...." Ms. Dade's action involves injury resulting from medical malpractice rather than from the negligent operation of a vehicle. Thus, the plain wording of neither statutory provision resolves the issue before us. Nor are the two statutes irreconcilable.

In determining the proper interpretation of § 12–309, in relation to Ms. Dade's medical malpractice action, we first set forth the legislative history of that provision. Second, we summarize certain of our past cases that have interpreted § 12–309.

The legislative history of § 12–309 is set forth in H.R.Rep. No.2010, 72d Cong., 2d Sess. (1933):

> The purpose of the [statute] is to protect the District of Columbia against unreasonable claims and to assist it in the defense of the public interest where claims are made within the 3 year statute of limitations but so long after the event that it is impossible for the District of Columbia to obtain evidence for use in litigation which may result.

Numerous instances were recited to the committee in which notice of injury as a result of alleged defective sidewalks, or other conditions, were brought to the attention of the commissioners by a filing of a suit for damages more than two years after the alleged injury occurred. During the intervening period the sidewalk may have been entirely replaced. Witnesses to the accident had moved and could not be located and the circumstances surrounding the injury had become a matter entirely within the knowledge of the plaintiff.

It is not intended to reduce the period within which suit may be filed, but the purpose of the bill is to give the District officials reasonable notice of the accident so that the facts may be ascertained and, if possible, the claim adjusted....

The committee is definitely of the opinion that this legislation is essential to protect the revenues of the District of Columbia from unreasonable suits....

*Id.* at 1–2. *See also Breen v. District of Columbia,* 400 A.2d 1058, 1060 (D.C.1979); *Hill v. District of Columbia,* 345 A.2d 867, 869 (D.C.1975); *Miller v. Spencer,* 330 A.2d 250, 251 (D.C.1974). The legislative history reveals that, by enacting the notice of claim provision embodied in § 12–309, Congress sought to make certain that the District received notice of potential claims within six months of the injury, or damage, to ensure adequate opportunity for investigation to determine facts, and to protect District revenues against unreasonable claims.[3] Assuming that § 12–309 applies to Ms. Dade's action against Dr. George,

its purpose of timely notice to provide for investigation would be defeated. Ms. Dade waited until May 23, 1995, approximately 18 months after Dr. George's alleged medical negligence took place, to file her lawsuit. When asked at trial about his brief encounter with Ms. Dade, Dr. George responded: "I don't remember seeing the patient." Had the District been given timely notice of the claim against its medical employee, he may have had a better chance of recalling his treatment of Ms. Dade on November 23, 1993. In addition, had the District deemed Ms. Dade's claim to be meritorious, its revenues may have been better protected by a settlement effort. *See Campbell v. District of Columbia,* 568 A.2d 1076, 1078 (D.C.1990) ("[T]he legislative purpose of § 12–309 was 'to ensure that District officials would be given prompt notice of claims for potentially large sums of money so that they could: quickly investigate before evidence became lost or witnesses unavailable; correct hazardous or potentially hazardous conditions; and settle meritorious claims.'") (quoting *Gwinn v. District of Columbia,* 434 A.2d 1376, 1378 (D.C.1981)).

Next, we examine certain of this court's cases interpreting § 12–309 to ascertain our approach in circumstances not covered by the plain words of the statute.[4] During 1979, in *Breen, supra,* we confronted the question of whether § 12–309 applied to intentional torts as well as accident cases emphasized in the legislative history of the statute. We held that § 12–309 applied to intentional torts, despite the absence of specific statutory language, and notwith-

---

3. We have been unable to locate the legislative history of § 1–1215, and neither Dr. George nor Ms. Dade references that history.

4. Recently, we concluded that § 12–309 does not apply to an independent water and sewer entity established by the Council of the District of Columbia. *See Dingwall v. District of*

*Columbia Water and Sewer Authority,* 766 A.2d 974 (D.C.2001), 2001 D.C.App. LEXIS 40. We stated that § 12–309 "has no application to a suit brought against WASA [Water and Sewer Authority] to which the District itself is not a party." *Id.* 766 A.2d at 978, 2001 D.C.App. LEXIS 40, at 5.

standing the legislative history. In doing so, we relied on Congress' purposes in enacting § 12–309:

> In emphasizing the statutory language, rather than the accident cases motivating Congress, we are willing to assume that libel and other intentional torts were "not within the specific contemplation of Congress." *Eastern Air Lines, Inc. v. C.A.B.*, 122 U.S.App.D.C. 375, 379, 354 F.2d 507, 511 (1965). Nevertheless, "it is no bar to interpreting a statute as applicable that 'the question which is raised on the statute never occurred to the legislature.'" *Id.* (quoting Cardozo, Nature of the Judicial Process 15 (1921)). We conclude from the broad language used, and from the House Report's emphasis on protecting District revenues, that the congressional concern at the time was a general one: the need for prompt notice of unliquidated damage claims against the District of Columbia. Accordingly, we cannot agree that § 12–309 should be construed to apply only to claims based on "accidents." We hold that ... § 12–309 applies as well to actions for injuries arising from intentional torts.

*Id.* at 1061 (footnotes omitted).[5] Although we held that § 12–309 applies to intentional torts, in *District of Columbia v. Campbell*, 580 A.2d 1295 (D.C.1990), we declined to extend its application to contract claims. We determined that the words "damages to person or property," as used in § 12–309 were "distinctly inapplicable to claims based on a breach of contract," *id.* at 1301, and "applie[d] only to actions sounding in tort." *Id.* at 1302 (citing *Peoples Drug Stores, Inc., supra,* 470 A.2d at 753). Significantly, we stated:

> [O]ur reading of the language is consistent with the District's greater need to receive notice in order to ascertain the facts in the tort context, where the District will often be unaware of any injury caused by a breach of its duty, than in the contractual context, where—almost by definition—the District is on notice that any breach will result in an injury.

*Id.* In *Dunmore, supra,* 662 A.2d at 1360, citing "the plain language of the statute and ... its overriding purpose of providing the District with prompt notice of claims against it," we declined to read the discovery rule into § 12–309. *Id.* (citing *Pitts v. District of Columbia*, 391 A.2d 803, 807 (D.C.1978)). *Dunmore*'s rationale also was based upon Congress' intent: "[A]pplication of the discovery rule to section 12–309 would frustrate the express intent of Congress to ensure for the District a reasonable opportunity to investigate, and possibly to settle, any likely claims that might be brought against it." *Id.*[6]

In none of the cases discussed above where we interpreted § 12–309 in a manner consistent with its legislative purposes were we faced with a potentially conflicting statutory provision reflecting a different public policy, as we are in this case. Section 1–1215(b) clearly allows a claimant to bring an action against a District medical employee "on account of personal injury or death caused by the negligent act or omission of the medical employee within the scope of his employment and performance

---

**5.** We noted that, although not expressly raised or considered, § 12–309 had been applied previously by this court, as well as the D.C. Circuit, to intentional tort cases. *Breen, supra,* 400 A.2d at 1061 n. 5.

**6.** Consistent with the legislative purpose behind the enactment of § 12–309, we held in

*DeKine v. District of Columbia*, 422 A.2d 981 (D.C.1980), that sending notice to the District within the six month statutory period is insufficient and that § 12–309 "requires that the District receive written notice within six months of the injury giving rise to the claim." *Id.* at 985 (footnote omitted).

of professional responsibilities...." No language in § 1–1215(b) requires that the District receive a § 12–309 notice of claim. In contrast, § 1–1215(a), which applies to a civil action or proceeding relating to the negligent operation of a vehicle by a District employee acting within the scope of his or her employment, specifically provides that if the District has not been named as a defendant, "the action shall be dismissed as to the employee and the case shall proceed as if the District had been a party defendant from the inception thereof." Thus, § 1–1215(a) must be read as precluding an action against a District employee in cases of negligent operation of a vehicle within the scope of employment, whereas the plain language of § 1–1215(b) permits an action against a medical employee for negligence during the scope of his or her employment.

Moreover, in none of the cases discussed above were we confronted with matters pertaining to medical employees being sued in their individual, as opposed to official, capacity where § 12–309 was held to be applicable. Thus, in *Shehyn v. District of Columbia*, 392 A.2d 1008 (D.C.1978), we recognized that § 12–309 was applicable to cases brought under a theory of *responde-at superior*. *Id.* at 1013–14 ("the statutory requirements must be met where the claim arises out of the tortious conduct of employees of the District, to which the District, as the superior, must respond"). However, we said nothing about § 12–309 also being applicable to cases in which the employee was sued in an individual capacity. Furthermore, in *Kelton v. District of Columbia*, 413 A.2d 919 (D.C.1980), a medical malpractice action against the District and one of its medical employees, we affirmed the dismissal of the lawsuit against

the District for failure to comply with § 12–309, but affirmed the dismissal of the action against the medical employee on statute of limitation grounds. Although we found the action against the medical employee to be "facially more problematic," *id.* at 922, we did not resort to the § 12–309 rationale for dismissal, even though that suit was filed long after the six month statutory period set forth in § 12–309.[7]

Based upon our reading of the cases mentioned above, we are reluctant to decide the matter before us on a legislative intent rationale. Nevertheless, the District argues that this case is controlled by *Doe by Fein, supra,* because "[w]e h[e]ld that [the] appellant ... failed to satisfy the requirements of section 12–309, and ... her claims against the District of Columbia and its employees [were] therefore barred." The legal principle on which the District relies has been taken out of context. The central issue in *Doe by Fein, supra,* on which the court focused was whether the appellant failed "to give the requisite notice to the District under ... § 12–309" of its claims against the District and two of its employees. *Id.* at 25 (footnote omitted). However, that issue turned on the last sentence of § 12–309: "A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section." Indeed, in the conclusion of our opinion we specifically stated: "We hold that the police reports filed after [the appellant] suffered her physical injuries were insufficient under ... § 12–309 to provide the District with notice of her potential claims." *Id.* at 31. Furthermore, *Doe by Fein* arose in the context of a specific question certified by the District of Colum-

---

7. The District's main and reply briefs in the case before us address neither *Shehyn,* nor *Kelton, supra.*

bia Circuit. *See id.* at 25. We did not focus on the precise issue raised in the case before us because, as the D.C. Circuit pointed out, "Doe has not argued on appeal that the district court erred in applying the notice requirement to all appellees, and therefore has waived the argument." *Doe by Fein v. District of Columbia,* 320 U.S.App.D.C. 198, 212 n. 14, 93 F.3d 861, 875 n. 14 (1996). Thus, our decision in *Doe by Fein, supra,* simply does not control the outcome of this case. It does not say that where the District must indemnify a medical employee sued for medical negligence committed within the scope of his or her employment, the complainant must comply with the notice requirements of § 12–309.

For the proposition that § 12–309 is applicable to claims against medical employees who are eligible for indemnification under § 1–1215(b), the District also relies upon two cases from the New York courts, *Ruiz v. Herrera,* 745 F.Supp. 940 (S.D.N.Y.1990) and *Fitzgerald v. Lyons,* 39 A.D.2d 473, 336 N.Y.S.2d 940 (1972). Neither case is persuasive with respect to the issue presented in the case before us. *Fitzgerald, supra,* concerned a plaintiff who was injured in a rear end automobile collision. The plaintiff alleged that the person driving the automobile that hit his car was an employee of the City of Buffalo. The "plaintiff had filed a timely notice of claim with the city." *Id.* at 942. In his answer, the defendant alleged that the plaintiff failed to commence his action within the statute of limitations. Thus, the

case clearly involved the statute of limitations, not the notice of claim provision, and the language pertaining to "real party in interest" must be read in that context.[8] As the court concluded in *Fitzgerald:* "Defendant is entitled to the protection afforded by the short Statute of Limitations contained in section 50–i, (subd. 1, cl.[c] ); and the action not being commenced within one year and 90 days of the date of accident, it is barred by the statute." *Id.* at 943–44.

In 1976, long before *Ruiz, supra,* was decided, the New York State legislature added a new subdivision to section 50–e of the General Municipal Law, [ (1)(b) ], pertaining to indemnification and notice of claim:

> Service of the notice of claim upon an officer, appointee or employee of a public corporation shall not be a condition precedent to the commencement of an action or special proceeding against such person. If an action or special proceeding is commenced against such person, but not against the public corporation, service of the notice of claim upon the public corporation shall be required only if the corporation has a statutory obligation to indemnify such person under this chapter or any other provision of law.

Therefore, when *Ruiz, supra,* was decided, New York had in place a statutory provision requiring a plaintiff to serve the public corporation, if that public corporation

---

8. The court stated:

> Section 50–b of the General Municipal Law provides that a municipality shall be liable and shall indemnify employees who are found liable for negligence in the operation of a municipally owned vehicle if the employee is discharging a statutory duty or is acting in the discharge of his duties or is 'within the scope of his employment. Where a municipal employee is operating a municipally owned vehicle within the scope

> of his employment at the time of an accident and is entitled to be indemnified under section 50–b, the municipality is the real party defendant in interest and the provisions of sections 50–e and 50–i of the General Municipal Law relative to the service of a notice of claim and the short Statute of Limitations of one year and 90 days are applicable to any action against the employee arising therefrom.

*Fitzgerald, supra,* 336 N.Y.S.2d at 942.

had a statutory obligation to indemnify the public employee against whom plaintiff brought suit. Although *Ruiz, supra,* apparently did not turn, on section 50–e (1)(b) with respect to plaintiff's 42 U.S.C. § 1983 count, on which the police officers were granted summary judgment,[9] *see* 745 F.Supp. at 946 n. 6, the court denied the police officers summary judgment as to the common law negligence count. After setting forth the pertinent text of § 50–e (1)(b) and discussing *Fitzgerald, supra,* as well as an indemnification section of the General Municipal Law § 50–j (1), the *Ruiz* court declared:

> There is no question that the officers were acting in the performance of their duties and within the scope of their employment at the time of the incident and are covered by the indemnification provision of Section 50–j (1). Since plaintiff failed to serve a notice of claim on the village of Port Chester, the claim of negligence against the defendant police officers must be dismissed.

*Id.* at 946. (footnote omitted.) Thus, we read the outcome of *Ruiz* as depending, at least in part, on § 50–e (1)(b).[10]

In response to the District's argument that, under § 12–309, she was required to give notice to the District of her claim against Dr. George, Ms. Dade asserts that "jurisdictions that require notice in actions against a municipal employee have statutes that expressly require such notice." [11] She also cites cases "conclu[ding] that statutory notice need not be filed with a municipality as a condition precedent to maintaining an action against a municipal employee or agent." [12] The District "acknowledge[s]" that there are cases from New Jersey, New Mexico, and Iowa that do not support its position, and urges us not to "adopt the reasoning of": *Chatman v. Hall,* 128 N.J. 394, 608 A.2d 263, 275 (1992) ("we cannot impute to the Legislature an intent to limit a plaintiff's right of action by means of a ninety-day notice provision that applies expressly against public entities") (citation omitted); [13] *Martinez v. City of Clovis,* 95 N.M. 654, 625 P.2d 583, 585 (1980) ("The language of the written notice section does not include, and therefore does not apply to, public employees"; the legislature could have required notice if it "intended a different interpretation"); and *Flynn v. Lucas Coun-*

9. In *Ruiz, supra,* the plaintiff filed suit against Port Chester, New York police officers, alleging false arrest under 42 U.S.C. § 1983, and common law negligence.

10. One week before oral argument in this case, the District called this court's attention to *Tackleson v. Abbott–Northwestern Hosp., Inc.,* 416 N.W.2d 454 (Minn.1987), pertaining to later legislative action which embodied an earlier decision of the court. Apparently the District desires to cite *Tackleson* for the proposition that a later statutory amendment may be regarded as clarifying existing law, rather than implying that existing law did not cover the situation. *Id.* at 456. However, the central issue in *Tackleson* concerned whether a two or six year statute of limitation applied to a negligent care and supervision action against nurses that arose prior to a statutory amendment.

11. In support of her contention she cites, for example, *Hall v. Sanchez,* 708 F.Supp. 922 (N.D.Ill., E.D.1989); *Williams v. Braslow,* 179 Cal.App.3d 762, 224 Cal.Rptr. 895 (1986).

12. *See Harris v. City of Montgomery,* 435 So.2d 1207 (Ala.1983); *Dutton v. McKinley County Bd. of Comm'rs,* 113 N.M. 51, 822 P.2d 1134 (1991); *Hucker v. City of Oakland Park,* 427 So.2d 244 (Fla.App. 4th Dist.1983).

13. After *Chatman, supra,* was decided, the New Jersey legislature amended the notice requirements of its Tort Claims Act to extend the protection of the notice of claim requirement to public employees. *See Lowe v. Zarghami,* 158 N.J. 606, 731 A.2d 14, 19 (1999); *Serrano v. Gibson,* 304 N.J.Super. 314, 700 A.2d 390, 393 (1997).

*ty Memorial Hospital,* 203 N.W.2d 613, 615 (Iowa 1973) ("The question of the nurse's rights [of indemnity] against the hospital is irrelevant to plaintiff's claim against the nurse").[14] We conclude that case law from other jurisdictions is not clearly helpful to the resolution of the issue before us.

■■■ Consequently, based upon our review of the legal issue presented in this case, the plain words of § 12–309 and § 1–1215(a) and (b), our prior cases interpreting § 12–309, cases from other jurisdictions, and legislative amendments to notice provisions in some of the other jurisdictions, we conclude that Ms. Dade was not required to give notice to the District prior to filing suit against Dr. George. We reach this conclusion, in part, because we are bound by the plain words of the applicable statutory provisions, in the absence of statutory ambiguity. As we said in *District of Columbia v. Acme Reporting Co.,* 530 A.2d 708 (D.C.1987): "'[W]e must look first to the language of the statute and, if it is clear and unambiguous, give effect to its plain meaning.'" *Id.* at 712 (quoting *Office of People's Counsel v. Public Service Commission,* 477 A.2d 1079, 1083 (D.C.1984)). Here, the plain words of the statutes at issue in this case did not require Ms. Dade to give notice of her claim to the District before suing a public medical employee acting within the scope of employment who is required by statute to be indemnified by the District, if he or she lacks insurance.

■■■ We are mindful that the District had an opportunity to amend § 12–309

when it enacted changes to § 1–1215 in the 1970's, but did not. Moreover, where two competing public policies are at work, as here, namely: (1) the policy that the District and its public purse ought to be protected against stale claims by being informed of claims in time to investigate them, determine the facts, and settle meritorious demands; and (2) the policy that one who is injured should not be left to suffer the harsh consequences of the disallowance of a meritorious claim on procedural grounds that are not explicitly based in statute; our duty is not to amend the statutes, but to follow their plain and unambiguous words, absent a clear and indisputable legislative intention to the contrary. Moreover, "[i]f statutes conflict, our task is to reconcile them if possible." *Harman, supra,* 718 A.2d at 117. In reconciling the statutes, our goal is "'to give effect to the language and intent of both.'" *Gonzalez, supra,* 498 A.2d at 1174 (quoting *District of Columbia v. Smith,* 329 A.2d 128, 130 (D.C.1974)). Consequently, "'where one statute is not irreconcilable with another statute but both statutes can have coincident operation, the court should interpret them so that they are both effective.'" *Id.* at 1176. Consistent with this principle, our decision in this case mandates notice, in accordance with § 12–309, where a tort action is maintained against the District of Columbia. However, under § 1–1215(b), it permits a claimant to bring suit against a medical employee of the District in his or her individual capacity, without giving notice of claim to the District under § 12–309, even though that

---

**14.** The Iowa Code was amended after *Flynn, supra,* was decided. As the court stated in *Peterson v. Pittman,* 391 N.W.2d 235 (Iowa 1986):

[O]ur holding in *Flynn* was overturned by a legislative amendment to the statute, 1974 Iowa Acts ch. 1263 § 5. Following the

amendment the notice requirements of section 613A.5 apply in suits brought against municipal employees acting as such, without regard to whether the municipality is a party to the suit.

*Id.* at 237 (citation omitted).

employee may be eligible for indemnification by the District.

Accordingly, for the forgoing reasons, we affirm the judgment of the trial court.

*So ordered.*